O

# United States District Court
# Central District of California

| | |
|---|---|
| JEFFREY S. O'NEIL,<br><br>                 Plaintiff,<br><br>    v.<br><br>CALIFORNIA COASTAL<br>COMMISSION; SANTA BARBARA<br>COUNTY,<br><br>                 Defendants. | Case No. 2:19-cv-07749-ODW (AFMx)<br><br>**ORDER DENYING SANTA BARBARA COUNTY'S MOTION TO DISMISS [21] AND GRANTING CALIFORNIA COASTAL COMMISSION'S MOTION TO DISMISS [25]** |

## I.    INTRODUCTION

Defendants California Coastal Commission ("CCC") and the County of Santa Barbara ("SB") each move to dismiss Plaintiff Jeffrey S. O'Neil's First Amended Complaint ("FAC"), which alleges that Defendants' conduct constituted an unconstitutional taking and a violation of substantive due process. (*See generally* SB's Mot. to Dismiss ("SB Mot."), ECF No. 21; CCC's Mot. to Dismiss ("CCC Mot."), ECF No. 25.) For the reasons that follow, the Court **GRANTS** CCC's Motion and **DENIES** SB's Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

In 1996, Plaintiff O'Neil purchased the property located at 2551 Wallace Ave., Summerland, California ("Subject Property").  (FAC ¶¶ 1, 24, ECF No. 12.)  O'Neil files this suit against the CCC, a state administrative body, and SB alleging their conduct denied him of all economic, beneficial, and productive use of the Subject Property without just compensation.  (FAC ¶¶ 4, 6, 7.)

The CCC enforces the California Coastal Act of 1976, which requires local governments to develop a Local Coastal Program, which includes a Land Use Plan ("LUP") and implementing ordinances.  (FAC ¶¶ 7, 12–13.)  The Coastal Act requires the CCC to certify each LUP, after which the CCC delegates authority over coastal development permits to the local government.  (FAC ¶¶ 14–15.)

In 1973, although other lots in the area retained their residential zoning, the Subject Property was assigned a recreation/open space land use designation ("REC").  (FAC ¶¶ 18, 19.)   This designation was included in SB's LUP that the CCC subsequently certified in 1980.  (FAC ¶¶ 18, 19.)  A REC zone limits the uses of the Subject Property to outdoor public and/or private recreational uses, such as "parks, campgrounds, recreational vehicle accommodations, and riding, hiking, biking and walking trails, golf courses, and limits structures and facilities to those 'required to support the recreational activities.'"  (FAC ¶ 22.)

In the late 1980s, O'Neil's real estate broker informed O'Neil that SB erred in designating the Subject Property as REC.  (FAC ¶ 25.)  On June 20, 1988, before O'Neil purchased the Subject Property, he received a letter from Dianne Guzman, SB's Planning Director, stating that the zoning "appears to have been inadvertently assigned.  (FAC ¶¶ 24, 25.)  O'Neil purchased the property in 1996, and between 1996 and 2006, O'Neil made plans to remodel the residence on the Subject Property; however, he received conflicting information from SB regarding his ability to renovate.  (FAC ¶¶ 24, 27.)

In April 2006, O'Neil applied to SB for a coastal development permit ("CDP") to demolish the existing cottage and construct a new residence.  (FAC ¶ 31.)  In August 2006, SB denied the request because the permit needed a "Rezone of the Property [("RZN")] and a General Plan Amendment [("GPA")]" request.  (FAC ¶ 32.)  The letter indicated that O'Neil had failed to provide rezone applications as requested in a prior correspondence from the Planning and Development Committee.  (SB Req. for Judicial Notice Ex. 1 ("August 2006 Letter"), ECF No. 22-1.)  Regardless, the SB indicated rezoning would not be possible because the LUP intended for the Subject Property to be zoned REC:

> On our review, the current land use designation (Recreation/Open Space), zoning (REC), and applicable Local Coastal Plan policies, such as Policy 7-9, are internally consistent with regard to this parcel. I have determined that they were clearly intended and not the result of a mapping error. Therefore, I cannot support a land use designation or zoning change for this parcel.

(August 2006 Letter.)  Despite the denial, O'Neil demolished the residence to mitigate safety hazards identified in prior inspections and pursuant to the verbal approval of a representative of SB.  (FAC ¶ 33.)

In 2008, O'Neil submitted applications to demolish the existing cottage, to construct a new home, and a for a variance from the parking and setback regulation.  (FAC ¶¶ 35–36.)  He also submitted a RZN request and a GPA request, referenced in the 2006 application.  (FAC ¶¶ 35–36.)  O'Neil renewed the permit applications in February of 2012.  (FAC ¶ 37.)  Between December 2008 and 2014, SB delayed determining O'Neil's applications and in December 2014, O'Neil's applications were deemed complete as a matter of law.  (FAC ¶ 38.)  On or about August 12, 2015, SB's Planning and Development Commission recommended that SB's Board of Supervisors deny the applications, but on November 3, 2015, the Board of Supervisors referred the applications back to the Planning and Development Commission with direction to draft findings to approve O'Neil's applications.  (FAC ¶¶ 39–40.)  This

exchange was repeated in 2018 and ultimately, on March 9, 2018, the Board of Supervisors approved the applications and rezoned the land on which the Subject Property rests for residential use.  (FAC ¶¶ 41–43.)

However, on April 4, 2018, two commissioners appealed SB's approval of O'Neil's renovation permit on the grounds that the development was inconsistent with SB's current land use plan.  (FAC ¶ 44.)  On May 21, 2018, the County submitted the "project-driven" RZN and GPA amendments in support of the coastal development permit application.  (FAC ¶ 46.)  After a one-year extension, the CCC denied the amendments on several alleged misrepresentations of the record and determined that the land use designation was "intended as a long-term planning effort to transition the property from a residential use to a recreation/open space use." (FAC ¶¶ 49–51.) Therefore, the RZN could not be permitted as it violated the land use designation. (FAC ¶¶ 49–51.)   As the CCC denied O'Neil's RZN and GPA General Plan Amendment request, O'Neil exhausted his local and state recourse.  (FAC ¶¶ 52–53.)

Therefore, on September 6, 2019, O'Neil brought suit against SB and CCC. (*See* Compl., ECF No. 1.)  On October 2, 2019, O'Neil filed his FAC alleging claims of (1) Uncompensated Taking per the Fifth and Fourteenth Amendments, (2) Right to Just Compensation brought under 42 U.S.C.§1983 per the Fifth Amendment and (3) Violation of Substantive Due Process per the Fifth and Fourteenth Amendments. (*See* FAC ¶¶ 55–74.[2])  Now, CCC and SB each move separately to dismiss the FAC (collectively, "Motions").   (*See* CCC Mot.; SB Mot.)  The Court addresses each Motion in turn.

### III.        REQUEST FOR JUDICIAL NOTICE

Both SB and O'Neil file requests for judicial notice.  (SB Req. for Judicial Notice, ECF No. 22; Pl.'s Req. for Judicial Notice, ECF No. 29.)  SB requests the Court to judicially notice (1) a letter to O'Neil from Steve Chase, Deputy Director of

---

[2] O'Neil's FAC caption does not match his pleaded causes of action, the latter of which the Court references here.

SB's Development Review Division, dated August 18, 2006 ("August 2006 Letter") and (2) sections of SB's Local Zoning Ordinance.  (SB Req. for Judicial Notice 2.) O'Neil requests the Court to judicially notice (1) a letter to SB's Board of Supervisors from Dianne Guzman, SB's Planning Director, dated June 20, 1988 ("June 1988 Letter"), (2) a letter to O'Neil's legal counsel from David Ward, SB's Planning and Development Deputy Director, dated November 30, 2007 ("November 2007 Letter"), and (3) a waterline permit issued in April 1997 for the Subject Property.  (Pl.'s Req. for Judicial Notice 2.)

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  While "undisputed matters of public record" are judicially noticeable, a court may not take judicial notice of disputed facts in public records.  *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001).  As the text is not subject to dispute, the Court grants SB's request for judicial notice of SB's Local Zoning Ordinance.  *Tollis, Inc. v. Cty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice.")

Alternatively, courts may consider documents discussed in the complaint per the doctrine of incorporation by reference.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Id*.  However, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document."  *Id*. (internal citations and quotation marks omitted).  As O'Neil discusses in the operative complaint the aforementioned letters and waterline permit to bolster his allegations, and in keeping with the policy behind the doctrine of incorporation by reference, the Court shall consider the exhibits to the extent that they are relevant in

determining the outcome of the motions.   Accordingly, the Court **GRANTS** the requests.

## IV.      LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear "the complaint could not be saved by any amendment." *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

# V.   SB'S MOTION TO DISMISS

SB moves to dismiss O'Neil's first and second causes of action for three primary reasons: (1) O'Neil's first claim—takings—is not ripe because the August 2006 Letter is not a final action; (2) O'Neil's second claim—right to just compensation—is barred by a two-year statute of limitations; and (3) also as to his second claim, O'Neil fails to allege that the August 2006 Letter caused any deprivation of use of his property.  (*See* SB Mot.)  O'Neil opposes each argument. (*See* Opp'n to SB Mot. 1, ECF No. 28.)

## A.   Ripeness of Takings Claim

The Fifth Amendment of the Constitution states that "property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."  *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

Regulatory takings claims are perfected when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  *Carson Harbor Vill., Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) overruled by *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019) (overruling the second prong of the test described in *Williamson* and quoted in *Carson*)); *Sullivan Equity Partners, LLC v. City of L.A*, No. 2:16-CV-07148-CAS-AGRx, 2020 WL 1163945, at *4 (C.D. Cal. Jan. 22, 2020).  Plaintiff must demonstrate that the regulating body made a "final and authoritative determination of the type and intensity of development legally permitted on the subject property."  *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 (9th Cir. 1987).  A claim is ripe only after the regulating body has made a final decision because "among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations," which cannot be

determined until the court can determine the extent of the regulatory taking. *Williamson*, 473 U.S. at 191 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

In 2019, the Supreme Court addresses the issue of ripeness and affirmed its analysis in *Williamson* regarding the finality requirement. *Knick*, 139 S. Ct. at 2169 ("Knick does not question the validity of this finality requirement, which is not at issue here.") In *Williamson*, the Supreme Court discussed the requirements for final determination and held that, because respondent failed to apply for variances despite the Commission's regulations to do so the Commission's disapproval of the request was not a final decision. *Williamson*, 473 U.S. at 190. The linchpin of the Court's decision was that the Commission never opined on whether a variance would be granted. *Id.*

> Respondent would not be required to appeal the Commission's rejection of the preliminary plat to the Board of Zoning Appeals, because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decisionmaking. . . . In contrast, resort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed.

*Id*. at 193. Thus, for the decision to be final, plaintiffs need not exhaust all state or county-based review of the decision, but must receive a negative determination on the required variances. *Id*.; *see also Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 657 (9th Cir. 2003) ("In *Williamson* the Supreme Court made it clear that resort beyond the 'initial decision-maker' is not necessary to fulfill the final decision prong of the ripeness analysis.")

Takings claim may be ripe under the Ninth Circuit's "futility exception" where at least one meaningful application has been made. *Kinzli*, 818 F.2d at 1454–55. "Under this exception, the resubmission of a development plan or the application for a variance from prohibitive regulations may be excused if those actions would be idle or futile." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501

(9th Cir. 1990). "Before claiming the exception, the landowner must submit at least one development proposal and one application for a variance if meaningful application and submission can be made." *Id*. The Ninth Circuit outlines several instances in which the futility exception applies, including the potential futility of requiring resubmission of a development application after prior submissions have been rejected by the local government. *Id*. at 1501–02, 1506 (citing *Am. Sav. & Loan Ass'n. v. Cty. of Marin*, 653 F.2d 364, 371 (9th Cir. 1981). Or if "further pursuit of permission to develop would cause such excessive delay that the property would lose its beneficial use." *Id*. at 1501 (citing *Kinzli*, 818 F.2d at 1454).

Here, SB moves to dismiss O'Neil's first claim for lack of finality. (SB Mot. 11–20.) In April 2006, O'Neil submitted a CDP application to demolish and rebuild his home; however, he failed to submit a RZN and GPA, even after SB sent correspondence in May identifying these deficiencies. (FAC ¶ 31; SB Mot. 14.) In August, SB sent him a letter informing him that it would close the case. (FAC ¶ 32.) SB asserts that the August 2006 Letter was not a final determination because O'Neil never submitted the required GPA and RZN. (Mot. 12–17.) However, O'Neil contends that the August 2006 Letter was a final determination or, alternatively, that reapplying with such documents would have been futile. (Opp'n to SB Mot. 11–13.) The Court agrees.

SB is correct that the August 2006 Letter denied the "coastal development permit application [a]s incomplete [as it] cannot be processed without a concurrent rezoning and Comprehensive Plan land use designation amendment." (August 2006 Letter.) However, in the letter, the Deputy Director "determined that [the land use designation and policies] were clearly intended and not the result of a mapping error. Therefore, [he] cannot support a land use designation or zoning change for this parcel." (August 2006 Letter.) The Parties agree that O'Neil had not submitted a RZN or GPA request in conjunction with his CDP application. Yet, the Commission passed judgment on any future such variance request.

The Court finds the facts in the instant matter distinct from those in *Williamson*. Although the landowner in *Williamson* similarly failed to request the necessary variances, there the Supreme Court held that the denial of the permit was not a final determination because had the plaintiff followed the procedures for obtaining a variance, that procedure would have resulted in a conclusive determination. *Williamson*, 473 U.S. at 193.  Here, in contrast, the Commission appears to have made a conclusive decision despite O'Neil's failure to request one.  As the letter clearly indicates the Commission's intent not to permit any variance, and therefore deny O'Neil's CDP application, the Court can determine the extent of the regulatory taking, keeping with the policy behind the ripeness requirement.  *See Williamson*, 473 U.S. at 186.  Accordingly, the Court finds the August 2006 Letter to be a final decision.

SB argues that the August 2006 Letter was drafted by a staff member whose opinion is not binding on the Board, which is the ultimate decision-maker on RZN and GPA variances.[3]  (Reply in Supp. of SB Mot. 8, ECF No. 31; SB Coastal Zoning Ordinance 14.) However, a Deputy Director in the Development Review Division of the Planning and Development Commission drafted the letter and authoritatively stated that he "has determined" that the REC designation was not a result of mapping error and that he "cannot support a land use designation or zoning change for [the Subject Property]."  (August 2006 Letter.)  As courts have held that landowners need not exhaust all local and state appeals, the Court finds that the August 2006 Letter suffices as a final determination.  *Williamson*, 473 U.S. at 193.

Furthermore, even if the August 2006 Letter is not a final decision, the Court finds that the futility exception applies in this situation.  O'Neil submitted the requisite development proposal, which amounts to a meaningful application even

---

[3] The SB Coastal Zoning Ordinance indicates which body has authority for land use and zoning decisions, the Director, Zoning Administrator, Planning Commission, or the Board.  (*See* SB Coastal Zoning Ordinance.)  The ordinance elaborates that "[i]f the Board is the decision-maker for a project due to a companion discretionary application (e.g., Coastal Land Use Plan amendment, Ordinance amendment, Rezone) the Commission shall make an advisory recommendation to the Board on each application."  (SB Req. for Judicial Notice Ex. 2 ("SB Coastal Zoning Ordinance"), ECF No. 22-2.)

without the variance requests because the August 2006 Letter clearly demonstrates that such a variance would have been denied. *See Del Monte*, 920 F.2d at 1501. The Commission's denial of the variances in 2008 is further evidence of futility. (FAC ¶¶ 35–39.) Additionally, requiring O'Neil to pass through multiple levels of review before receiving a verdict from the Board in order to gain a final determination would "cause such excessive delay that the property would lose its beneficial use." *Del Monte*, 920 F.2d at 1501. Certainly, such is the case here where, despite the August 2006 Letter, O'Neil diligently persisted through SB's system only to receive a positive decision by the Board in 2018, which was subsequently negated by even further proceedings. (*See* FAC ¶¶ 35–53.) From the allegations in the FAC and the judicially noticed materials, the Court determines that O'Neil's takings claim is ripe for adjudication. Accordingly, the Court **DENIES** SB's Motion on this basis.

**B.      Statute of Limitations of Right to Just Compensation Claim**

SB asserts that O'Neil's second claim—right to just compensation—is barred by a two-year statute of limitations. (SB Mot. 20–24.) Parties agree that a two-year statute of limitations applies. (SB Mot. 20; Opp'n to SB Mot. 6.) *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007) ("[C]laims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, . . . and in California, that limitations period is two years.") A claim under § 1983 accrues when the government takes property without just compensation. *See Knick*, 139 S. Ct. at 2168. Here, O'Neil alleges that he has been deprived of use and enjoyment of the Subject Property since 2006. (FAC ¶ 32; Opp'n to SB Mot. 7.) Accordingly, absent some form of tolling, the statute of limitations expired in 2008.

O'Neil asserts that the Court should equitably toll the statute of limitations, or alternatively, apply the continuing violation doctrine. (Opp'n to SB Mot. 7–11.) The Court now considers these arguments.

A party is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[4]  *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (applying equitable tolling to a § 1983 claim) (internal quotation marks omitted); *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1120 (9th Cir. 2006) ("Equitable tolling focuses on whether there was excusable delay by the plaintiff." (internal quotation marks omitted)).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  And, both elements must be satisfied.  *Menominee*, 136 S. Ct. at 756.

Furthermore, "the absence of prejudice is "a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified."  *Menominee*, 136 S. Ct. at 757 n.5. Ultimately, the court has discretion to determine whether equity requires extending a limitations period.  *Smith-Haynie v. D.C.*, 155 F.3d 575, 579 (D.C. Cir. 1998) ("[E]quitable tolling and estoppel, which ask whether equity requires extending a limitations period, are for the judge to apply, using her discretion, regardless of the presence of a factual dispute.")

First, O'Neil alleges that he has diligently pursued his rights by applying for permits in 2008 and again in 2012.  (FAC ¶¶ 31–37.)  He continued the state-based process to exhaustion.  (FAC ¶¶ 31–53.)  SB concedes that O'Neil pursued these county applications but asserts that he failed to diligently pursue a takings claim based on the August 2006 Letter.  (SB Mot. 24.)  However, until 2019, the Supreme Court rule of law established that a plaintiff seeking a federal takings claim must first seek "compensation through the procedures the State had provided."  *Knick*, 139 S. Ct. at

---

[4] The Supreme Court took up the issue of equitable tolling again in *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016).  The Supreme Court mentioned in dicta that it has never held that the *Holland* test applies outside the habeas context.  *Id.* at 756 n.2. Nevertheless, the Supreme Court did not determine that a stricter test applies in a nonhabeas case. *Id.*  Accordingly, the Court applies the equitable tolling test in *Holland*.

2169 (internal quotation marks omitted).  Thus, by following SB's procedures, O'Neil was diligently pursuing both his administrative remedies and the federal takings claims.

Second, O'Neil alleges that SB's "'affirmative misrepresentation' and 'stonewalling' prevented him from appreciating the claim that arose in 2006" and therefore, gave rise to the extraordinary circumstance warranting equitable tolling. (Opp'n to SB Mot. 8–9.)  In 1988, 1997, and 2007, representatives of SB allegedly made assertions that O'Neil's property was mistakenly designated and unfit for recreation use.   (FAC ¶¶ 25, 28, 34; Opp'n to SB Mot. 8–9.)   After the 2007 representation, O'Neil again pursued recourse through the local process, but SB allegedly "inexcusably dragged its feet."  (Opp'n to SB Mot. 9.)   SB asserts that O'Neil's allegations fail to establish an extraordinary circumstance.  (Reply in Supp. of SB Mot. 11–12.)  An extraordinary circumstance is an "external obstacle" to timely filing, one beyond the litigant's control.  *Menominee*, 136 S. Ct. at 756.  Though O'Neil cites and discusses the standard for equitable estoppel rather than equitable tolling, the circumstances he describes are beyond his control and constitute an external obstacle.   Unlike the Ninth Circuit examples of non-extraordinary circumstances—"[l]ow literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition"—O'Neil persisted to exhaust his state and local recourse in part due to SB's continued and inconsistent representations that the REC zoning was an error.  *Baker v. Cal. Dep't of Corr.*, 484 F. App'x 130, 131 (9th Cir. 2012).  These representations were in fact the cause of the untimeliness.  *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) ("These extraordinary circumstances must be the cause of [the] untimeliness." (internal quotation marks omitted).)

The Court further considers the "absence of prejudice." *Menominee*, 136 S. Ct. at 757 n.5.  Though SB asserts that tolling would cause it prejudice because evidence and witnesses are not available thirteen years later, SB, and O'Neil for that matter, include extensive documentation in the requests for judicial notice.  (Reply in Supp. of

1   SB Mot. 13; *see* SB Req. for Judicial Notice; Pl.'s Req. for Judicial Notice.)   It

2   appears that, upon sufficient discovery, parties will gather most if not all relevant

3   documentation and correspondence related to this claim.  SB also asserts that it had no

4   notice of this claim, yet O'Neil has been battling various arms of the county from

5   before the August 2006 Letter to as recently as May 21, 2018.  (Reply in Supp. of SB

6   Mot. 13; FAC ¶ 46.)  Given the extensive history between SB and O'Neil and the

7   alleged statements from SB's representatives, the Court finds in its discretion that "a

8   plausible factual basis" exists to equitably toll O'Neil's claim.  *Estate of Amaro v. City*

9   *of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011); *Smith-Haynie*, 155 F.3d at 579.

10  Accordingly, the Court **DENIES** SB's motion on this basis.

**C.   Failure to Allege Deprivation of Use for Right to Just Compensation Claim**

12          SB also asserts that, as to his second claim, O'Neil fails to allege that the

13  August 2006 Letter caused any deprivation of use of the Subject Property.   (SB

14  Mot. 24–25.)  Specifically, SB asserts that after the August 2006 Letter, O'Neil was

15  left in the same position as before.  (SB Mot. 25.)  SB is correct that the state of

16  O'Neil's ownership in the Subject Property was the same before and after the August

17  2006 Letter; however, O'Neil alleges that he purchased the Subject Property after

18  representatives of SB assured him on numerous occasions that the Subject Property

19  was "inadvertently" or "mistakenly" zoned as REC.  (FAC ¶¶ 25, 28, 34.)  O'Neil

20  purchased the Subject Property based on its long history of residential use, and the

21  cottage he planned to remodel for his retirement.  By denying O'Neil the opportunity

22  to rebuild or remodel on the Subject Property, the August 2006 Letter serves as the

23  regulatory government action that interfered with O'Neil's investment-backed

24  expectation.  *Penn Cent.*, 438 U.S. at 124.  Thus, O'Neil sufficiently alleges that the

25  August 2006 Letter did in fact cause a deprivation of use.

26          Construing the allegations in the light most favorable to O'Neil, the Court finds

27  that O'Neil has plausibly alleged a harm from the August 2006 Letter.  *See Lee*, 250

28  F.3d at 679.  Accordingly, the Court **DENIES** SB's Motion on this basis.

1    For the reasons discussed above, SB's Motion is **DENIED** in its entirety.

2                    **VI.   CCC'S MOTION TO DISMISS**

3        Next, the Court addresses the merits of CCC's Motion.  CCC argues that, under

4    the Eleventh Amendment, this Court has no jurisdiction over it.  (*See* CCC Mot. 1.)

5        The Eleventh Amendment bars federal suits against a state by its own citizens.

6    *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) (collecting cases).  The Eleventh

7    Amendment immunizes State agencies from damages liability that would be paid from

8    public funds in the state treasury.  *Id*. at 665.  Here, both the CCC and O'Neil agree

9    that a commission of the state acting in its capacity as a state regulator would certainly

10   enjoy the benefits of the Eleventh Amendment under the proper circumstances.  (CCC

11   Mot. 8; FAC ¶ 7.)  However, O'Neil argues that an exception permits him to sue the

12   CCC here.

13       The Supreme Court has recognized two exceptions to the application of the

14   Eleventh Amendment.  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense

15   Bd.*, 527 U.S. 666, 670 (1999).  "First, Congress may authorize such a suit in the

16   exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted

17   after the Eleventh Amendment and specifically designed to alter the federal-state

18   balance. Second, a State may waive its sovereign immunity by consenting to suit."  *Id*.

19   (citation omitted).  Here, O'Neil alleges claims based on an unconstitutional taking,

20   none of which relate to the Fourteenth Amendment and to none of which the State of

21   California has consented.  (*See* FAC ¶¶ 55–74.)  Accordingly, neither exception

22   applies in this instance.

23       O'Neil argues the Court should extend Knick to "remove the state-litigation

24   requirement in all circumstances." (Opp'n to CCC Mot. 7, ECF No. 27.) As

25   previously discussed, in *Knick*, the Supreme Court abrogated in part its prior decision,

26   *Williamson*, and held that a takings claim is ripe when the taking occurs, and a

27   claimant need not exhaust all state remedies prior to filing a takings claim in federal

28   court.  *Knick*, 139 S. Ct. at 2169.  *Knick* did not address Eleventh Amendment

immunity.  Thus, as CCC argues, *Knick* did not conceive of an additional exception to the Eleventh Amendment immunity.  (CCC Mot. 9–10.)  Although the Ninth Circuit has not addressed this specific issue, the Tenth and Fifth Circuits found the defendant-States to be entitled to Eleventh Amendment immunity.  *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) ("[W]e consider whether the UDOC Defendants are entitled to Eleventh Amendment immunity and conclude that they are."); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 457 (5th Cir. 2019) (quoting *Williams*).  The Court agrees that *Knick* did not address sovereign immunity and thus, provides no basis for allowing O'Neil to circumvent the bar

Alternatively, to the extent O'Neil argues that the *Ex parte Young* exception applies, the Court addresses its applicability.  Per *Ex parte Young*, claims can proceed despite the Eleventh Amendment, where a plaintiff seeks prospective injunctive relief. 209 U.S. 123, 156–57 (1908).  Thus, under this exception, the federal takings actions must seek prospective relief."  *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008).  However, as in *Seven Up Pete Venture*, the Court cannot characterize O'Neil's relief request as prospective as he seeks just compensation, or damages, for the prior allegedly unconstitutional taking.  523 F.3d at 956; *see City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710–11 (1999) ("[J]ust compensation is, like ordinary money damages, a compensatory remedy . . . [and therefore] legal relief.").  Accordingly, this exception too is inapplicable.

As O'Neil files suit against CCC, a state agency, without its consent in federal court, the CCC is within its right to raise Eleventh Amendment immunity. Accordingly, the Court **GRANTS** CCC's motion.

## VII.    CONCLUSION

For the foregoing reasons, the Court **DENIES** SB's Motion (ECF No. 21), **and GRANTS** CCC's Motion (ECF No. 25) and **DISMISSES** CCC **with prejudice**.

**IT IS SO ORDERED.**

May 18, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**